## F. W. HUTCHISON, Minister of Interior, *vs.* STEAMER NEBRASKA.

### IN ADMIRALTY.   BEFORE ALLEN, C.J.

### FEBRUARY, 1873.

A steamer having been seized for clandestinely introducing a contagious disease into this Kingdom, contrary to Section 295, Civil Code; and it appearing that a passenger who landed from the steamer had the small-pox, but that it was not clearly developed, and that the captain and surgeon of the steamer had no knowledge of the passenger's illness:

Held, that if the vessel introduced the disease clandestinely, it must be through the instrumentality or neglect of its own agents; and the vessel is not liable for any secret conduct of its passengers, which reasonable vigilance could not prevent or detect.

Libel dismissed.

### DECISION OF ALLEN, C.J.

This is a libel against the steamship Nebraska, in which it is alleged in the information, by Ferdinand W. Hutchison, Minister of the Interior and President of the Board of Health, that said ship arrived in this port on the 5th day of May, 1872, and that there was on board a certain passenger by the name of John Fletcher, who had been notoriously sick for the last twenty-four hours previous to his arrival, with a contagious disease known as the small-pox, and which could easily have been ascertained by proper medical inspection and examination by the master of said steamer and her officers; and it is further alleged that there were certain children sick of the same disease, yet the master of said steamer, although he knew that the said contagious disease existed on board at the time of her arrival in port, falsely signed a certificate of health; and it is further alleged that by reason of gross negligence, and false certificate of the master of said steamer, the small-pox was clandestinely introduced into this Kingdom, contrary to the 295th Section of the Civil Code, in which it is declared that any

vessel which shall be the means of clandestinely introducing into this Kingdom any contagious disease, dangerous to the public health, shall be liable to seizure, confiscation, and sale for the benefit of the public treasury.

There is a general denial of the allegations in the libel, and the issue is clearly made; and the question submitted to the Court is, was the small-pox, as alleged in the libel, clandestinely introduced here by means of the steamer Nebraska?

I am satisfied from the evidence that the passenger Fletcher had the small-pox, but that it was not clearly developed when he landed; and the question is, whether he was permitted to go ashore when the officers of the ship knew, or by reasonable diligence could have known, that he had the disease. A clandestine introduction of the disease is, with secrecy and with knowledge, or an omission to acquire the knowledge which could have been done with reasonable diligence and intelligence.

The counsel for the informant contends that the mere fact of the introduction of the disease by the Nebraska was *prima facie* evidence that it was clandestinely done, and that the burthen of proof was on respondent, and in this opinion I fully concur.

If a master gives a health certificate, it is his duty to know that there is no contagious sickness on board his vessel, and if he neglects to use the means to acquire the necessary information, it is a clandestine introduction of disease if such sick persons are landed. On this ship there is a surgeon, and the captain relies on him to keep him informed as to the health of the passengers. No better precaution can be exercised than to employ a competent medical man to attend the sick on board. This is the recognized usage on all passenger ships. The captain testified that he had no knowledge of any contagious disease on board the Nebraska on the passage referred to, and was not told so by any one.

The surgeon of the ship testified that he was acting as such on board the Nebraska on her passage from San Francisco, whence she arrived on the 5th of May last, and that he did not

know by name a passenger by the name of Captain John Fletcher. He says that if there had been anyone sick with small-pox he should have known it, and that if Fletcher was sick on board he never applied to him for advice, and that he was not aware that any passengers landed here were sick with any disease.

It appears by the testimony of Captain Briggs, a fellow-passenger, that he knew Fletcher, and that he saw him the day before the vessel arrived in port, and he said he felt very bad, and there was on his hands a kind of rash, but it could not be seen except by close observation. He says that Fletcher refused to see the doctor, and said that he could not do anything with ships' doctors; that he would wait until he got on shore. Captain Briggs says that he did not tell Fletcher what he thought the disease was; "it might have been the measles, but I thought it was the small-pox. I did not mention to anyone on board ship that I thought Captain Fletcher had the small-pox, and I heard nothing of its being epidemic in San Francisco. The Nebraska arrived Sunday morning, and Fletcher came ashore about half-an-hour after we arrived."

Captain Lambert, a fellow-passenger, testified that he saw Fletcher often during the passage, and that he was very sick with a very bad cold; that the night before arrival he saw Fletcher, and observed that his face was badly swollen, and he examined his legs and arms, and they were a dark red, and he thought it the erysipelas. He further testified that he never heard it mentioned that there was small-pox on board.

A. F. Judd, Esq., was a passenger on the Nebraska at the same time, and he testified that he knew Fletcher on board, and he was very much surprised when he heard that he (Fletcher) had the small-pox. He says he never heard the small-pox mentioned on board.

Dr. Hoffmann, who examined Fletcher the day after he came ashore, states that when he saw him he had an eruption more or less all over the body, but more particularly around the abdomen. He says: "My impression was at first that I had

seen something like this, and two diseases passed through my mind; first the idea of small-pox, as having seen something like it here in 1853, then again in regular malignant typhus in Europe, but it seemed to me strange that wherever I saw this round the abdomen it was much more malignant in the face in those cases I saw before. The nose, face and mouth were the worst, which was not so here. Again, whenever I saw patients in that condition they were prostrated or delirious, and again in typhus the same—entirely prostrated. I then examined him and asked the history of this case, and he told me he had been sick ever since he left Chicago with cold and rheumatism, and had been travelling without accommodation; he also said he had had scurvy at some time or other. After that the case became more obscure to me, as the marks led me to think the man had a disease produced by want of proper food, or exposure generally, and this with the former severe scurvy made me think perhaps that the man might not have the small-pox, but a disease produced by his blood being in a bad state, at the same time I could not make it out exactly. I thought it might be small-pox, or not, but certainly not the regular form of small-pox."

Dr. Hutchison testified that he went in company with Dr. Hoffmann to Fletcher's room to examine him, and after examination, was of opinion that it was not the small-pox, from the history of the case as made by Fletcher himself.

Dr. McKibbin, after examination of the case, and hearing from Fletcher a history of the state of his health since the time he left the Eastern States, was of the same opinion.

Dr. McGrew was of opinion that Fletcher had the small-pox from his first examination of his case, although a cold affecting the lungs retarded its development. The doctor says that he died of congestion of the lungs, and not of small-pox. Without the cold the small-pox would have run its regular course. "I should judge that he had had it two or three days. If I had seen him two or three days before, I could not have said what it was."

It is very evident that he declined to consult the attending physician of the steamer, and that the account he gave of himself and of the state of his health was calculated to mislead and did mislead several accomplished physicians in relation to the character of his disease, who examined him the day after he came on shore. From the foregoing evidence it is not strange that there should not have been a knowledge of the disease by those on board.

The counsel for the libellant contends that this is a case analogous to that of a violation of the revenue laws. This would be a sound position if the code did not make a palpable distinction. In the one case it declares that a vessel shall be liable to forfeiture, if by its means there shall be a clandestine introduction of a contagious disease, or any disease dangerous to the public health; and in the other, a landing of foreign goods from a foreign vessel, or Hawaiian vessel from a foreign port, at any other port than a port of entry, will make a forfeiture.

The very act of landing the goods, by the express tenor of the law, makes a forfeiture. The omission to place on the inward manifest a list of goods makes the goods liable to confiscation, although in this case the errors may be remedied when it shall be made to appear that there was no wrong intention or gross negligence. The landing of a passenger, although sick with a contagious disease, if not developed, may be explained; but the proof is on the defense to show that there was not a clandestine introduction of the disease, and that there was reasonable care in the examination of the vessel and the passengers on board.

The disease with which the passenger Fletcher was afflicted was doubtless more developed when this examination took place by the physicians in port, than when he left the vessel the day before, and it is not surprising that it should have been called rash or erysipelas by those on board. There was no suspicion of small-pox among the passengers, except in the mind of Captain Briggs, and he did not make it known to the physician or any one else on board, as it was his duty to have done. It is very

evident that it was not known by the officers of the ship that Fletcher was afflicted with small-pox when he landed here, and therefore there could not have been a clandestine introduction of the disease.

The next question, and a far more difficult one to decide, is this: Was there such effort to ascertain the state of health of the passengers as would probably have created a suspicion that a contagious disease was on board? Generally, when a person is sick, the physician's attendance and advice is solicited. In this case, however, it is evident that there was a determination in the mind of Fletcher not to call on the steamer's physician. He seems to have less confidence in the physicians who are employed on passenger vessels than in the regular physicians in port, and hence from him the physician on board the steamer received no knowledge of his case, or from anyone else, or a suspicion that he was laboring under any disease. There was nothing to excite his suspicion that the small-pox was on board. He testifies that he daily visited and examined the passengers; that he was not aware of anyone having small-pox; that he did not know Fletcher, and that no request was made to him to visit and administer to him. It is in evidence also that there was daily examination of all parts of the vessel, and it is not pretended that there was any negligence on the part of the physician in attending upon passengers when called upon. This is all the precaution which is usually exercised on passenger ships, and it is generally sufficient, and would have been in this case had Mr. Fletcher exercised the prudence which most persons do when sick, of consulting the physician on board.

It is very evident either that Fletcher did not know his true condition, or he had a singular disinclination to make it known, as was illustrated by his account of himself to the physicians on shore. Had the physician's attention been called to him, it being the day before Drs. Hutchison, Hoffmann and McKibbin examined him, it is very probable that he would not have called it small-pox, still I should have been of opinion that it would have been the duty of the physician to have reported the case to

the captain, and his duty to inform the authorities before permitting him to land, that he was afflicted with a disease that might be contagious, and on failure to do this, it would have been a clandestine introduction of the disease, if it proved contagious. But in this case, knowledge of the disease is not traced to the master or the physician, and a reasonable diligence on their part is proved. Had Fletcher made known his case to the physician, although the nature of the disease might have been obscure, still it was of that character that should have created an apprehension that it was a contagious disease, and my opinion upon that state of facts would have been that a reasonable precaution had not been exercised, as it would have been their duty to have prevented his landing until at least the authorities had opportunity to have examined the case, and made a decision of the proper course to take to protect the public health.

The counsel for the libellant very properly asserts that the Legislative Assembly had a right to pass laws to preserve the public health by preventing the introduction of disease either by fraud, accident, negligence or mistake, and the question in this case is, have they passed a law having this power? Had the language of the law been that any vessel which shall be the means, in any way whatever, of introducing into this Kingdom any contagious disease, shall be liable to seizure, confiscation and sale, the position of the counsel would have been sound; but I am of opinion that the word clandestine was purposely inserted to protect vessels from forfeiture by the fraud, negligence, or peculiarities of passengers. It would not be difficult for one afflicted with a contagious disease to conceal it on the passage, as it appears in this very case, and to make a forfeiture of the vessel should only be done by clear and express terms of the law. Was the vessel the means of clandestinely introducing the disease? I hold that there is a material distinction between the vessel and its passengers. If the vessel introduced it clandestinely, it must be through the instrumentality of its own agents, or by their negligence; but the vessel is not liable, by

any rule of construction of this law, for any secret conduct of its passengers which reasonable vigilance could not prevent or detect. It would be dangerous to vessels to be subjected to a more rigid law than our own, under the construction which I have given it, and which, as it seems to me, is the only one of which it is susceptible. Laws are not made to repress commerce and navigation, but to regulate intercourse between nations, and it would be a rare instance that a vessel could escape responsibility under the construction which I have given. Persons who are ill usually make it known, and call on the physician of the ship. It causes no expense to the party. Had there been no physician in the service of the Nebraska, and whose duty it would have been to attend to all cases of illness, I should have been of opinion that the vessel would have been liable, for want of proper attention to the condition of the passengers, and a probable want of knowledge. But in view of that service, in the discharge of which there is no evidence of negligence or inattention, and in view of the fact that the nature of Fletcher's disease when he went on shore was so obscure as not to excite any suspicion or comment among the passengers, and to baffle the judgment of eminent physicians on shore, and also from the fact either of a studious effort to conceal the character of his illness, or a strange disinclination to consult the physician attached to the steamer, I am clearly of opinion that there was no clandestine introduction of the disease, as alleged in the libel; and therefore I adjudge the same to be dismissed, each party paying costs.

*W. C. Jones,* for libellant.

*C. C. & F. H. Harris,* for respondents.

February 28, 1873.